IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:15-cv-04793-DCN |
| CANDICE MURPHY, *personally and as Personal Representative of the Estate of John McMeeking*, G.M.M., *a minor born January 26, 2005, and* G.M.M., *a minor born December 11, 2006*, | ) ) ) ) ) ) | **ORDER** |
| Defendants/Third Party Plaintiffs | ) ) | |
| v. | ) ) | |
| GAIL WILLIAMSON and SHANNON HORNING, | ) ) ) | |
| Third Party Defendants | ) ) | |

This matter is before the court on third-party defendant Gail Williamson's ("Williamson") motion to dismiss, ECF No. 84, and third-party defendant Shannon Horning's ("Horning") motion to dismiss, ECF No. 89. The court grants both motions to dismiss.

**I. BACKGROUND**

State Farm is an insurance company incorporated in the state of Illinois with its principal place of business in Illinois. Candice Murphy ("Murphy") is a resident of Charleston County and is the mother of two minor children who are also residents of Charleston County and who are named defendants in this action (collectively, the

1

"Murphy defendants").[1] The minor defendants were born on January 26, 2005 and December 11, 2006 to Murphy and John McMeeking ("McMeeking"). Murphy and McMeeking were married on May 27, 2006. State Farm issued a life insurance policy to McMeeking on October 14, 2009 with a policy date of September 23, 2009. Compl., Ex. A. Murphy was designated as beneficiary of $100,000.00 of the policy, and other persons were designated beneficiaries for the remainder of the basic plan amount of the policy. McMeeking and Murphy entered into a separation agreement on June 22, 2010, which provided that both parties shall have life insurance of $100,000.00 "and shall maintain these at this level for the benefit of the children." Compl., Ex. B. On August 5, 2010, a family court judge issued a final order approving the agreement and adopting it as the order of the court. Compl., Ex. C. The final order of divorce did not provide by its express terms that McMeeking and Murphy's divorce would not revoke McMeeking's prior designation of Murphy as to beneficiary of the life insurance process. On October 30, 2012, McMeeking signed a change of beneficiary form listing Murphy as beneficiary of $100,000.00, Stuart McMeeking as beneficiary of $75,000.00, and Shannon Horning as beneficiary of $75,000.00. See Compl., Ex. D. On March 17, 2014, a family court judge issued a final order of divorce. See Compl., Ex. E. The final order of divorce did not state that, notwithstanding Murphy and McMeeking's divorce, Murphy was to remain as beneficiary of $100,000.00 under the policy.

On August 2, 2015, McMeeking died. Murphy was appointed personal representative of his estate on August 11, 2015. Murphy submitted a life insurance claim

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2, the minors are referred to by their initials, G.M.M. The minors have the same initials and are therefore referenced by their birthdates in addition to their initials.

form claiming benefits under the policy on August 18, 2015. Id. Ex. F. State Farm provided written notice on October 15, 2015 to Murphy that she was not qualified from receiving the $100,000 in life insurance proceeds under S.C. Code Ann. § 62-2-507, which states in pertinent part:

> Revocation by divorce, annulment, and order terminating marital property rights . . .
>
> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>
> (1) revokes any revocable:
>
> (i) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument; [.]

State Farm filed an interpleader action on December 1, 2015 against Murphy and GMM, seeking guidance from the court on how to distribute the $100,000 portion of the proceeds of the policy in light of the statutory restrictions of S.C. Code Ann. § 62-2-507. On March 10, 2016 the court entered an order for interpleader directing State Farm to pay $101,028.50 into the court. ECF No. 19. State Farm paid $101, 028.50 into the court on March 10, 2016. ECF No. 21.

On June 3, 2016, the Murphy defendants initiated the instant third-party action against third party defendant Gail Williamson ("Williamson"), a State Farm insurance agent, and Shannon Horning ("Horning"), a beneficiary of the policy, for intentional interference with a contractual relationship and civil conspiracy. ECF No. 33. Williamson filed a motion to dismiss on January 19, 2017, ECF No. 84, to which Murphy responded on February 2, 2017, ECF No. 90, and Williamson replied on February 9,

2017, ECF No. 92. Horning filed a motion to dismiss on February 2, 2017, ECF No. 89, to which Murphy responded on February 16, 2017. ECF No. 94. The court held a hearing on February 21, 2017. The motions have been fully briefed and are ripe for the court's review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) [] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Williamson and Horning move to dismiss Murphy's third-party complaint in its entirety. While Williamson and Horning filed separate motions to dismiss, the motions are based on the same set of basic facts and include largely identical briefing.[2] Thus, the court separates its analysis between the intentional interference with contract claim and the civil conspiracy claim but otherwise analyzes the motions as one.

#### 1. Intentional Interference with Contract

Murphy's claim for intentional interference with contract centers on her assertion that State Farm had a duty to pay the primary beneficiaries of the Policy, and it paid all beneficiaries except Murphy. ECF No. 94 at 12.

Before proceeding to the interpleader action, the court notes that as an initial matter while Murphy maintains that she has properly "alleged all elements" of the intentional interference with contract claim, she seems to confuse a recitation of the

---

[2] Both Williamson and Horning filed briefing that ignore the page restrictions set out in Local Rule 7.05(B), which states that "[u]nless an exception is granted by the court, no memorandum shall exceed: (1) Thirty-five double-spaced pages in the case of an initial brief of any party . . ." Horning's memorandum is support of his motion to dismiss was 50 pages—the vast majority of which was identical to Williamson's memorandum. Williamson then filed a 37 page reply brief, in violation of Local Rule 7.05(B)(2) which limits reply briefs to "[f]ifteen double-spaced pages." Neither Williamson nor Horning filed a motion to file excess pages. During the hearing on this motion, counsel for both Williamson and Horning agreed to pay $1 per word in excess of the page limit. Horning's motion, at fifteen pages and approximately 6,750 words over the limit, would cost counsel $6,750. Williamson's reply, at twelve pages and approximately 5,400 words over the limit, would cost counsel $5,400. While this exchange may have been in jest, the court takes this as an opportunity to remind counsel about the importance of adhering to this district's local rules.

elements of a claim with alleging facts sufficient to support a claim. Murphy is correct that she is not required to establish every element of her claim, but statement such as "both Horning and Williamson intentionally procured the breach of contract between State Farm and Murphy" are inadequate to plead her cause of action under the Rule 12(b)(6) pleading standard. Even assuming that Murphy has alleged sufficient facts that State Farm breached a contract by filing the interpleader action—which, the court notes, she has not—this argument misunderstands the purpose of an interpleader action.

To state a claim for intentional interference with a contract, a plaintiff must prove: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." DeBerry v. McCain, 274 S.E.2d 293, 296 (S.C. 1981). The third amended complaint fails even the relatively lax pleading standard of Rule 12(b)(6) because, as a matter of law, State Farm's filing of an interpleader action does not constitute a breach of contract. The goal of an interpleader action is to "[a]bsolve the stakeholder from the threat of multiple liability by determining which of the claimants is entitled to the stake." Equitable Life Assurance Soc'y v. Jones, 679 F.2d 356, 358 n. 2 (4th Cir. 1982); see also 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1701 at 483 (1986) (noting that interpleader was originally developed to protect against "double vexation upon a single liability."). "Were the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based on the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated." Commerce Funding Corp. v. S. Fin. Bank, 80 F.Supp.2d 582, 585 (E.D. Va. 1999).

Whether Murphy is the rightful recipient of McKeeking's life insurance is the very question that the interpleader action seeks to answer. In similar cases, courts have found that a valid interpleader action shields a stakeholder from liability with respect to counterclaims that claimants to life insurance proceeds have brought. In ReliaStar Life Ins. Co. v. Lormand, 2011 WL 900113, at *5 (E.D. Va. Mar. 11, 2011), the court dismissed a breach of contract claim based on a life insurer's filing of an interpleader action, reasoning that "[plaintiff] contends she is likely entitled to Dr. Winkler's death benefit. Whether she is the rightful recipient of the death benefit is also the question the interpleader action seeks to answer." Similarly, in Prudential Insurance Company of America v. Hovis, 553 F.3d 258 (3rd Cir. 2009) the court considered whether a valid interpleader action shielded a stakeholder from liability for counterclaims. The Hovis court found that since none of the counterclaims were "truly independent" of the interpleader action seeking to resolve who was entitled to the life insurance proceeds, the insurer's bringing of the interpleader action protected it from liability. Id. at 264–65. Faced with a similar situation, with defendants in an interpleader action asserting counterclaims against the insurer based on the funds at issue in the interpleader action, the court in Commerce Funding Corp. v. S. Fin. Bank, 80 F.Supp.2d 582, 585 (E.D. Va. 1999), held that "the very purpose of the interpleader action would be utterly defeated" if the counterclaims were allowed to go forward.

Murphy attempts to distinguish these cases, arguing that in this case there is no "uncertainly as to the primary beneficiary's primary entitlement to insurance proceeds." ECF No. 94 at 13. However, a review of the third amended complaint demonstrates that this is squarely the scenario that the court has before it. State Farm brought the

7

interpleader action because, in the aftermath of S.C. Code Ann. § 62-2-507, it was unable to determine the proper recipient of the $100,000 designated for Murphy in McKeeking's life insurance policy. The court has already determined that the interpleader action was proper because there was some question of law regarding the rightful beneficiary of the $100,000 in life insurance proceeds. Although Murphy alleges that State Farm has denied her payment under the Policy, this allegation ignores the purpose of State Farm's interpleader action—to resolve the uncertainly of whether the divorce decree expressly reserves Murphy's right to the life insurance proceeds. State Farm is in no way attempting to retain the life insurance proceeds—indeed, State Farm is attempting to return the money through this interpleader action once its true owners are determined. Although the court acknowledges that Murphy's intentional interference with contract claim is against third-parties Williamson and Horning instead of against State Farm as the insurer, like the counterclaims in Hovis, Commerce Funding Corp., and ReliaStar Life Ins. Co., the claim is based entirely on the funds that State Farm has interpleaded. The court will not allow Murphy to bring claims that depends on the assumption that State Farm was required to pay Murphy the $100,000 that is interpleaded. To do so would circumvent the very purpose of an interpleader action.

Since Murphy defendants have not adequately pleaded breach, an essential element of an intentional interference with contract claim, the court need not analyze the remaining elements of the intentional interference with contract claim. The court grants the motion to dismiss as it relates to this claim.

### 2. Civil Conspiracy

Murphy's second cause of action alleges a civil conspiracy among third-party defendants Williamson and Horning. It fails as well.

Under South Carolina law, "[a] civil conspiracy . . . consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." Lee v. Chesterfield Gen. Hosp., Inc., 344 S.E.2d 379, 382 (S.C. Ct. App. 1986) (citations omitted). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). Moreover, because the essence of a civil conspiracy claim is the special damage resulting to the plaintiff, the alleged damages must exceed the damages alleged for the plaintiff's other claims. Id.

Although somewhat unclear from the complaint, the court surmises that Murphy is alleging that Horning and Williamson have formed a civil conspiracy by interfering with Murphy's attempts to obtain information and assets belonging to McKeeking's Estate. Murphy points to the following specific facts in support of her claim: (1) Horning's response to Murphy's subpoena seeking copies of all correspondence between him and Williamson regarding the Policy that he be paid $180.00 for the time spent reviewing his emails; (2) Williamson's initial denial of Murphy's request for a copy of the Policy; (3) Williamson's initial response to Murphy's subpoena seeking communications between her and Horning that she was unable to locate or retrieve any electronic correspondence related to the McKeeking file; and (4) Williamson's request that Murphy provide a copy of the divorce decree before proceeds from the Policy would

be paid. ECF No. 92 at 6. Murphy also seems to place significant emphasis on a series of emails exchanged between Williamson and Horning concerning Horning's submission of his claim, arguing that these emails "exceed the bounds of a simple claim for proceeds under a life insurance policy." Id. at 7. All of these facts were already alleged in Murphy's claim for intentional interference with contract action against Williamson and Horning.

Murphy alleges that she has sustained special damages in the form of "loss of the immediate use of the life insurance proceeds, loss of funds to pay debts of the estate, attorneys' fees and costs to defend an Interpleader action, potential fees and costs for a Guardian ad litem to represent the minor children in the Interpleader action." Am. Compl. ¶ 64. All of these damages are associated with Murphy's decision to bring suit against State Farm for breach of contract and bad faith in connection with the interpleader action as opposed to damages specific to bringing this civil conspiracy claim. Whether or not there was a civil conspiracy between Williamson and Horning, Murphy would still have incurred the costs associated with, for example, hiring a guardian ad litem for the minor children in the interpleader action. Indeed, the court issued an order dated May 31, 2016 appointing a guardian ad litem for the minor children—months before Murphy even filed the third-party complaint against Williamson and Horning. ECF No. 31.

Murphy has failed to allege special damages which arose specifically because of the conspiracy itself, and that were not caused by the intentional interference with contract claim. Pye v. Fox, 633 S.E.2d 505, 511 (S.C. 2006) ("Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action."). This alone means that her

civil conspiracy fails. See Hackworth, 682 S.E.2d at 875 (affirming the lower court's dismissal of the plaintiff's civil conspiracy claim because the plaintiff "repeated verbatim the same damages in its civil conspiracy claim as are alleged in its claim for breach of contract accompanied by a fraudulent act"); Charleston Aluminum, LLC v. Samuel, Son & Co., 2006 WL 2370292, at *3 (D.S.C. Aug. 15, 2006) (dismissing the plaintiff's state law civil conspiracy claim because "the damages pleaded by [the p]laintiff in the civil conspiracy cause of action are duplicative of the damages asserted with respect to the contract causes of action").

Furthermore, a claim for civil conspiracy must allege "additional facts in furtherance of the conspiracy" rather than restate facts supporting other claims. Todd v. South Carolina Farm Bureau Mutual Ins. Co., 278 S.E.2d 607, 611 (S.C. 1981). Put another way, Murphy cannot plead the same set of facts for the actionable wrong and the civil conspiracy, then expect to recover damages for both. See id. In her claim for civil conspiracy, Murphy has merely incorporated by reference the alleged acts of Williamson and Horning in her intentional interference with contract claim and added conclusory allegations that Williamson and Horning were engaged in a conspiracy. Where "[t]he only alleged wrongful acts plead are those for which damages have already been sought," a claim for civil conspiracy fails. Id. Murphy's allegations for the civil conspiracy claim fail the "additional facts" test as set out in Todd.

Since Murphy has failed to plead special damages and her civil conspiracy claim fails the "additional facts" test, the court grants the motion to dismiss as to the civil conspiracy claim.[3]

---

[3] Even assuming that Murphy had pleaded special damages, her civil conspiracy claim would still fail. A review of cases where courts have found a viable civil conspiracy claim is instructive in demonstrating the type of conduct needed to serve as a justification for a civil conspiracy claim. In Integrity Worldwide, Inc. v. Int'l Safety Access Corp., 2015 WL 1297823, at *3 (D.S.C. Mar. 23, 2015), the court held that where plaintiff had pled that defendants "communicated with each other, drafted documents, signed agreements" to create a fraudulent security interest with the purpose to defraud creditors, there was a viable claim for civil conspiracy. Similarly, in James v. Pratt & Whitney, 126 F. App'x 607 (4th Cir. 2005), the Fourth Circuit found that an aircraft mechanic had stated acts in furtherance of a conspiracy where he alleged that the aircraft engine manufacturer conspired and acted to harm him in retaliation for his refusal to falsify maintenance records. None of those types of allegations are present here. Instead, Murphy states that Williamson has been extremely hostile to Murphy in all of her dealings with her, while "Williamson and Horning have a friendly relationship with one another." ECF No. 92 at 5. Where, as here, there are only vague, conclusory allegations of conspiracy, the civil conspiracy claim fails at the threshold motion to dismiss stage. See Connor v. Real Title Corp., 165 F.2d 291, 294 (4th Cir. 1947) (concluding that conclusory allegations of "vicious conspiracy and collaboration" between three named defendants were insufficient to state a claim for civil conspiracy).

## IV. CONCLUSION

For the reasons set forth above, the court grants both Williamson's and Horning's motions to dismiss.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 19, 2017
Charleston, South Carolina**