IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:15-cv-04793-DCN |
| v. | ) ) | |
| CANDICE MURPHY, personally and as Personal Representative of the Estate of John McMeeking, G.M.M, a minor born January 26, 2005, and G.M.M., a minor born December 11, 2006, | ) ) ) ) ) ) | **ORDER** |
| Defendants/Third Party Plaintiffs | ) ) | |
| v. | ) ) | |
| GAIL WILLIAMSON and SHANNON HORNING, | ) ) ) | |
| Third Party Defendants | ) ) | |

This matter is before the court on Murphy's motion to reconsider the court's May 19, 2017 order dismissing Murphy's amended third-party complaint. ECF No. 132. The court denies Murphy's motion for reconsideration.

## I. BACKGROUND

State Farm is an insurance company incorporated in the state of Illinois with its principal place of business in Illinois. Compl. ¶ 1. Murphy is a resident of Charleston County and is the mother of two minor children who are also residents of Charleston

1

County and who are named defendants in this action.[1]  Id. ¶ 2.  The minor defendants were born on January 26, 2005 and December 11, 2006 to Murphy and John McMeeking ("McMeeking").  Id. ¶¶ 5, 7.  Murphy and McMeeking were married on May 27, 2006.  Id. ¶ 6.  State Farm issued a life insurance policy to McMeeking on October 14, 2009 with a policy date of September 23, 2009.  Id. ¶ 8; Compl. Ex. A.  Murphy was designated as beneficiary of $100,000.00 of the policy, and other persons were designated beneficiaries for the remainder of the basic plan amount of the policy.  Id. ¶ 10.  McMeeking and Murphy entered into a separation agreement on June 22, 2010, which provided that both parties shall have life insurance of $100,000.00 "and shall maintain these at this level for the benefit of the children."  Id. ¶ 9; see also Compl. Ex. B.  On August 5, 2010, a family court judge issued a final order approving the agreement and adopting it as the order of the court.  Compl. Ex. C.  The final order of divorce did not provide by its express terms that McMeeking and Murphy's divorce would not revoke McMeeking's prior designation of Murphy as to beneficiary of the life insurance process.  On October 30, 2012, McMeeking signed a change of beneficiary form listing Murphy as beneficiary of $100,000.00, Stuart McMeeking as beneficiary of $75,000.00, and Shannon Horning as beneficiary of $75,000.00.  See Compl. Ex. D.  On March 17, 2014, a family court judge issued a final order of divorce.  See Compl. Ex. E.  The final order of divorce did not state that, notwithstanding Murphy and McMeeking's divorce, Murphy was to remain as beneficiary of $100,000.00 under the policy

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2, the minors are referred to by their initials, G.M.M.  The minors have the same initials and are therefore referenced by their birthdates in addition to their initials.

On August 2, 2015, McMeeking died. Compl. ¶ 14. Murphy was appointed personal representative of his estate on August 11, 2015. Id. ¶ 15. Murphy submitted a life insurance claim form claiming benefits under the policy on August 18, 2015. Id. Ex. F. State Farm provided written notice on October 15, 2015 to Murphy that she was disqualified to receive the $100,000 in life insurance proceeds under S.C. Code Ann. § 62-2-507, which states in pertinent part:

> Revocation by divorce, annulment, and order terminating marital property rights . . .
> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
> (1) revokes any revocable:
> (i) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument; [.]

State Farm filed an interpleader action on December 1, 2015 against Murphy and GMM, seeking guidance from the court on how to distribute the $100,000 portion of the proceeds of the policy in light of the statutory resrictions. On March 10, 2016 the court entered an order for interpleader directing State Farm to pay $101,028.50 into the court. ECF No. 19. On March 10, 2016 State Farm paid $101,028.50 into the court. ECF No. 21.

Murphy's motion to reconsider is ripe for the court's review.

## II.   STANDARD

### A.     Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." While

3

Rule 59(e) does not supply a standard to guide the court's exercise of its power to alter or amend, the Fourth Circuit has recognized that a court may grant a Rule 59(e) motion "only in very narrow circumstances: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002). Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Moreover, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted." Sams v. Heritage Transp., Inc., 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).

Rule 59(e) provides an "extraordinary remedy that should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (internal citation omitted); Wright v. Conley, 2013 WL 314749, at *1 (D.S.C. Jan. 28, 2013). Whether to alter or amend a judgment under Rule 59(e) is within the sound discretion of the district court. Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

### B. Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides:

> [o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

>    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>    (4) the judgment is void;
>    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>    (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  In order to obtain relief under Rule 60(b) the moving party must "show (1) that the Rule 60(b) motion is timely; (2) that [the non-moving party] will not suffer unfair prejudice if the default judgement is set aside; and (3) that that [the movant's defense] is meritorious."  Westlake Legal Group v. Yelp, Inc., 599 F. App'x 481, 484 (4th Cir. 2015) (quoting Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 n. 3 (4th Cir. 1997)).  When a moving party seeks relief under the catch-all provision of subsection (b)(6), he must also show the existence of "extraordinary circumstances."  Murchison v. Astrue, 466 F. App'x 225, 229 (4th Cir. 2012) (quoting Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004)).  "[E]xtraordinary circumstances [are those] that create a substantial danger that the underlying judgment was unjust."  Id. (alterations in original) (quoting Margoles v. Johns, 798 F.2d 1069, 1073 (7th Cir. 1986)).

### III.  DISCUSSION

Murphy asks the court to reconsider its order filed May 19, 2017 ("the May Order") granting Williamson and Horning's motions to dismiss, ECF Nos. 84 and 89.  ECF No. 132 at 1.  Murphy contends that she has always been entitled to the insurance proceeds at issue, and that because there were no adverse interests State Farm did not file the interpleader action in good faith.  Murphy brings no new facts or law before the court, but takes this motion as an opportunity to relitigate the order on the motion to dismiss.

5

That is, of course, not the purpose of a motion to alter/amend or a motion to reconsider. See Pac. Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright, et al., Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995) (holding that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment."). Indeed, reconsideration of a judgment after its entry is an "extraordinary remedy which should be used sparingly." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009). Where a party seeks reconsideration as Murphy does on the basis of "manifest error," the Fourth Circuit has held that the earlier decision cannot be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (internal quotations and citations omitted). It may be, as Murphy claims, that as a consequence of the May Order she cannot continue with her claims against Williamson and Horning. But a party's inability to litigate claims does not constitute "manifest injustice" as contemplated by Rule 59(e), and certainly does not strike the court with the force of a "five-week old, unrefrigerated dead fish." The court discusses—and rejects—each of Murphy's arguments below. Murphy's motion to reconsider is denied in full.

### A. Valid Interpleader Action

First, Murphy argues that State Farm had no basis for filing the interpleader action because Murphy was the only claimant, and there was no "actual threat of valid competing claimants" to the $100,000. ECF No. 132 at 6. However, as the court explained in its interpleader order, ECF No. 19, the order appointing a Guardian ad Litem for the minor children, ECF No. 31, and the May Order, ECF No. 127, at the time that

State Farm filed this interpleader action it was unclear whether Murphy was entitled to remain as the beneficiary of the $100,000. Specifically, as the court stated in its interpleader order, under S.C. Code §62-2-507(c) "the divorce of a marriage revokes any revocable beneficiary designation made by a divorced individual to the divorced individual's former spouse." ECF No. 19 at 2. Because this statute was, at the time that the funds were interpleaded, relatively new, State Farm was understandably in doubt whether to issue payment of the life insurance proceeds to Murphy. The question of whether S.C. Code §62-2-507(c) applied to bar Murphy as a beneficiary of the Policy is the exact type of situation that the interpleader action was created to remedy. It is not, as Murphy contends, like the interpleader actions that were comprised of "ethereal gossamer" that Judge Murnaghan was concerned with in <u>Equitable Life Assurance Soc'y v. Jones</u>, 679 F.2d 356, 358 n.2 (4th Cir. 1982).

      To the extent that Murphy is arguing that it was "manifest injustice" that as a result of State Farm's "denial" of her claim to the $100,000 she did not immediately receive her share of the Policy like Horning and Stuart McMeeking, this argument is unavailing. As an initial matter, the court reminds Murphy that State Farm did not <u>deny</u> her claim, it simply interpleaded the insurance proceeds into the court because it was in doubt who to issue payment of the proceeds to and wanted to protect itself from multiple liability. Indeed, a necessary component of an interpleader action is that the funds are not immediately paid out to the competing claimants. Murphy also seems to take issue with Horning and Stuart McMeeking being paid their designated share of the Policy proceeds immediately. However, there was no question as to whether Horning and Stuart McMeeking were entitled to their shares of the Policy—there was no analogous

7

ambiguity in the application of a recently enacted statute that would have led to State Farm questioning whether these two parties should have received their designations from the policy. Murphy argues that State Farm should have ordered Horning and Stuart McMeeking to deposit their share of the Policy into the court, as it was always understood that their shares of the proceeds were to benefit the minor children. While this may have been "understood," it was never memorialized in a writing such as the agreement between Murphy and McMeeking to maintain $1000,000 in life insurance proceeds for the minor children.

Since the applicability of S.C. Code §62-2-507(c) to bar Murphy as a beneficiary of the $100,000 created a genuine question of who was entitled to the Policy proceeds, the court finds—once again—that State Farm had a valid basis to file an interpleader action. It denies Murphy's motion to reconsider on this count.

### B. Intentional Interference with Contract

Murphy then turns to the May Order's dismissal of her intentional interference with contract claims against Horning and Williamson. Murphy contends that the court "summarily concluded" that State Farm's filing of the interpleader action did not constitute a breach of contract. ECF No. 132 at 8. As explained in the May Order, and once again in Section III.1.A, State Farm had a valid basis to file this interpleader action—namely, whether the recently enacted S.C. Code §62-2-507(c) barred Murphy as a beneficiary of the $100,000. Accordingly, State Farm's failure to pay the policy proceeds immediately to Murphy does not constitute a breach of contract. See Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 260 (3d Cir. 2009) (holding that insurer was protected from potential beneficiary's breach of contract claims related to insurer's

failure to pay policy proceeds to potential beneficiary); ReliaStar Life Ins. Co. v. Lormand, 2011 WL 900113 at *5 (E.D. Va.) (dismissing counterclaim for breach of contract because stakeholder was protected from counterclaim based on the interpleaded funds); Commerce Funding Corp., 80 F.Supp.2d at 586 (dismissing counterclaim for breach of contract against stakeholder because party's argument that stakeholder should have turned over the funds to the party was "precisely the issue to be decided in the claim for interpleader").

Since an intentional interference with contract claim cannot proceed with a breach of contract—and, as explained above State Farm's filing of this interpleader action does not constitute a breach of contract—Murpy's motion to reconsider the intentional interference with contract claims against Horning and Williamson is denied.

**C.     Civil Conspiracy**

Finally, Murphy contends that the court should reconsider the dismissal of her civil conspiracy claim against Williamson and Horning. The court declines to do so. The court directs Murphy to the following footnote in the May Order that detailed the type of conduct that courts have found to be sufficient for a civil conspiracy claim:

> Even assuming that Murphy had pleaded special damages, her civil conspiracy claim would still fail. A review of cases where courts have found a viable civil conspiracy claim is instructive in demonstrating the type of conduct needed to serve as a justification for a civil conspiracy claim. In Integrity Worldwide, Inc. v. Int'l Safety Access Corp., 2015 WL 1297823, at *3 (D.S.C. Mar. 23, 2015), the court held that where plaintiff had pled that defendants "communicated with each other, drafted documents, signed agreements" to create a fraudulent security interest with the purpose to defraud creditors, there was a viable claim for civil conspiracy. Similarly, in James v. Pratt & Whitney, 126 F. App'x 607 (4th Cir. 2005), the Fourth Circuit found that an aircraft mechanic had stated acts in furtherance of a conspiracy where he alleged that the aircraft engine manufacturer conspired and acted to harm him in retaliation for his refusal to falsify maintenance

> records. None of those types of allegations are present here. Instead, Murphy states that Williamson has been extremely hostile to Murphy in all of her dealings with her, while "Williamson and Horning have a friendly relationship with one another." ECF No. 92 at 5. Where, as here, there are only vague, conclusory allegations of conspiracy, the civil conspiracy claim fails at the threshold motion to dismiss stage. See Connor v. Real Title Corp., 165 F.2d 291, 294 (4th Cir. 1947) (concluding that conclusory allegations of "vicious conspiracy and collaboration" between three named defendants were insufficient to state a claim for civil conspiracy).

State Farm Life Ins. Co. v. Murphy, 2017 WL 2216296, at *5 (D.S.C. May 19, 2017).

Furthermore, Murphy's basis for the civil conspiracy claim against Horning and Williamson is that "[t]ogether Williamson and Horning conspired with each other with the purpose and intent of injuring Murphy and the minor children, and intentionally, willfully, wrongfully and maliciously deprived them of the proceeds of the insurance policy which were the subject of the Court Order to [ensure] support for the minor children in the event of the Father's death." ECF No. 132 at 12. As explained at great length in Section III.1.A and Section III.1.B, as well as in the May Order, State Farm's filing of this interpleader action delayed, but did not deprive, Murphy of the $100,000 in insurance proceeds. Because of the ambiguity in whether S.C. Code §62-2-507(c) barred Murphy as a beneficiary, State Farm had a valid basis for filing this interpleader action. Therefore, no amount of allegations of any amount of emails or clandestine meetings between Williamson and Horning would support Murphy's civil conspiracy claim because the underlying tort that Murphy appears to be alleging—intentional interference with contract—fails. See Beasley v. FV-I, Inc., 2013 WL 1192018, at *5 (E.D. Va. Mar. 21, 2013) ("This Court has discussed Plaintiff's failure to state a claim for fraud against either Defendant, and will not further belabor the issue except to state that there does not

exist an actionable claim for the underlying alleged wrong of fraud, and thus there can be no action for civil conspiracy based thereupon.").

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Murphy's motion to reconsider.

**AND IT IS SO ORDERED**.

                              **DAVID C. NORTON**
                              **UNITED STATES DISTRICT JUDGE**

**October 12, 2017**
**Charleston, South Carolina**